WILLIAM A. WHEELER *vs.* CITY OF WORCESTER.

If the rightful flow of the water of a stream is obstructed by the joint action of several parties, although not acting in combination or by concert, it is no defence to the maintenance of an action against one of them that all are not joined as defendants; but this objection goes only to the damages.

A city is not liable in an action at law for an injury to a private person by the obstruction of the flow of the water of a stream, caused by an increase of the surface wash from the streets into the same, if such increase is only the natural result of the growth of the city, or by the emptyings of the sewers into the same, if these are no greater than would otherwise have been carried in by surface washings, and are not sufficient to exert any appreciable effect on such person; or by a bridge constructed by a railroad corporation, under the authority of its charter; or by a bridge constructed by the city, if the bridge when built was sufficient to allow the free flow of the water as the stream then was, or with such changes as were likely to be produced by natural causes alone, although it has proved insufficient for this purpose, with such changes as have been produced by the exercise by a railroad corporation of its chartered rights, or by the wrongful acts of individuals.

TORT to recover damages for the wrongful obstruction of a stream, whereby the water was set back and the plaintiff injured. The case was referred, in this court, to John Wells, Charles S. Storrow and Asaph Wood, as auditors, with an agreement that their determination of the facts should be conclusive, subject to the decision of the court upon such questions of law as might be reported.

The auditors made a report of the facts, and the questions of law which they were requested to reserve, of which the material parts are as follows :

The plaintiff seeks to recover damages for injuries to his buildings, iron castings, and material for his business as an iron and brass founder, and also for the stoppage of his works, and delays and interruptions of his business, occasioned by the flooding of his premises at various times during six years prior to the date of his writ, by the setting back of the water of Mill Brook, in the city of Worcester, through a drain which leads from beneath the basements of his buildings, and discharges into said brook. The plaintiff claims that this flooding of his premises has been substantially caused, or at least increased, by obstructions in the bed of the brook below said premises, and across its channel, for

which the defendants are responsible, and which render them liable in this action, either for the whole of said damages, or for such portion thereof as results from causes for which the defendants are responsible.

The plaintiff complains, 1st, That the defendants constructed, as parts of their highways, artificial gutters, the water conducted by which washed in sand and gravel, and deposited large quantities thereof at particular points in the stream, thereby causing it to be filled with gravel, sand and other substances, and its bed, below and opposite to the plaintiff's drain, raised so as to obstruct the free discharge of water, and set it back upon the plaintiff's premises.

2dly, That the defendants have constructed certain underground sewers for the drainage of the city, and caused the same to discharge into the brook, whereby the channel is filled or obstructed by the sediment or deposit from said sewers.

3dly, That the defendants constructed and have maintained a bridge across said stream, below the plaintiff's premises, upon Front Street, a public highway in said city, so as to obstruct the free passage of the water in all times of high water, and thereby increase its height against the outlet of the plaintiff's drain.

4thly, That certain bridges erected by the Worcester and Nashua Railroad Corporation, for purposes both of highway and railway crossings, and adopted and used by the city for its public ways, are provided with insufficient water ways, whereby back water is caused or increased upon the plaintiff's premises.

The plaintiff's works are situated upon and below the outer angle of a bend in Mill Brook, upon land which was formerly a meadow, subject to frequent overflow at all times of high water. He became sole proprietor and commenced his present works in 1835, but had previously been interested in some business upon the premises as early as 1823. In 1828 the Blackstone Canal was constructed. The upper lock of the canal was at what is now called Fox's Dam, about a mile below the plaintiff's works. The canal terminated at or near the lower line of the plaintiff's land with an excavated basin, into which the plaintiff made the outlet of his drain, having a fall of about a foot in two hundred

and fifty feet. The brook left the plaintiff's land, passing away from his upper line, and returning entered the canal at some distance below his original lower line. In consequence of the broad and deepened channel afforded by the canal, which also cut through a gravelly ridge at the lower end of the meadow, the water was taken off more readily than before, and little or no inconvenience was suffered from floods, so long as the canal was used and kept dredged by its proprietors.

The plaintiff's original buildings were placed wholly above the surface of the ground, no excavation being made except for the walls. After he became sole owner, about the year 1838, he built other buildings, for whose basements he made excavations about two feet in depth. His drain was made to take the water which might come in from the ground beneath these basement rooms. The floors are about one foot below the level of the stream as it passes the upper line of the plaintiff's land. These basements were originally occupied, but for several years have been too wet, and have been abandoned.

In 1846 the use of the canal was discontinued. In 1849, the plaintiff, having purchased the land, which included the head of the canal, from his own land down to the point where the brook entered it, a distance of about three hundred and fifty feet, filled up the basin and canal, extending his drain and making its outlet into the brook at the point where it entered the canal; having a fall of about one foot in the whole distance. Since 1838 the lands on both sides of the stream have been laid out in lots and built upon; streets have been established, raised and graded, and the whole territory has gradually become densely occupied.

Directly after the discontinuance of the canal in 1846, a stone bridge was built by the city across it, in Front Street, about ninety rods below the present outlet of the plaintiff's drain. The waterway of this bridge is much narrower than that of the bridge which previously crossed the canal. The plaintiff claims that it is not of sufficient width and capacity for the stream in high water. In 1849 or 1850 the Worcester and Nashua Railroad Corporation constructed two other bridges across the stream, within a short distance below the outlet of the plaintiff's drain,

for the purposes both of the railway and highway crossings. The waterways of these bridges are about two feet wider than that of the Front Street bridge, but of much greater length. In 1851 the principal sewer was constructed, discharging into the brook under the Front Street bridge. Since the discontinuance of the canal, the channel has become filled with sand, gravel, bricks, stones and rubbish of all kinds, washed or thrown in, so that at the upper end, by the outlet of the plaintiff's drain, the bed of the stream is now three and a half feet higher than the bed of the old canal. It has also been narrowed by walls, embankments, buildings and other structures, regular and irregular, and in various ways its capacity freely to carry off the water, when there is an excess, is very materially diminished and limited. The lock has been used as the flume or bulkhead of a mill called Fox's Mill, and a dam or waste pour-over maintained there, by which the water has been kept up; and the owners of the mill claim the right so to maintain it.

The evidence satisfied us that the plaintiff has suffered serious injuries in his property from the water set back upon his premises, within six years, which would not have occurred in the condition of things as they were in 1846. We estimate the damage for these injuries at $1500.

The positions of law, presented and relied on by the plaintiff, were: 1. If either of the three causes of obstruction complained of as before stated, or all of them combined, were substantial contributing causes of the flooding of his premises and the injuries to his property, then the defendants are responsible for all the damages occasioned by such flooding.

2. If either or all of these causes combined contributed in any degree to produce the flooding, or to increase its height and effects, then the defendants are liable at least for all damages occasioned by such increased height and effects, or such proportion of the whole damages as can be attributed to these causes

3. If the proportion to be attributed to these causes cannot be ascertained, the plaintiff is entitled to judgment for nomina. damages in his favor.

4. It was the duty of the city to construct its bridges so as

not only to provide for the condition of things at the time of construction, but also for future contingencies. If not now suitable for the proper discharge of the water, on account of the filling up and narrowing of the channel, and these changes were reasonably to be anticipated, the city is liable for the consequences of their present insufficiency.

5. If the city use the brook for the discharge of their sewers, it is their duty to remove all accumulations made by them in the channel of the brook, which may tend to diminish its capacity for the passage of the water of the stream.

6. The city having adopted and used the bridges over the brook upon Exchange Street and Bridge Street, for those highways, is responsible for any defect or insufficiency in their construction or state of repair, by which the water of the stream is obstructed and set back upon the plaintiff.

The defendants presented and relied upon the following positions : 1. If the bridge on Front Street is so constructed as to take the ordinary flow of the stream, at the different seasons of the year, without serious interruption or impediment, that is all that is necessary.

2. If the bridge was so constructed that the waterway would properly carry off all the water as the channel and flow of water were in 1846, when it was built, and would do the same now, if the channel were cleared of other obstructions which have since been placed in its bed and along its banks by individuals and causes over which the city has no control, then the defendants are not under obligation to build a new bridge, or responsible in damages to the plaintiff, although it should be found that the effect of its waterway, operating with the other obstructions, in the present condition of the channel, is to increase the height of water at the outlet of the. plaintiff's drain, and add to the extent of the flooding and injury to his premises.

3. Upon the facts in the case, the city cannot be chargeable with any liability for the bridges on Exchange Street and Bridge Street, which were constructed by the railroad corporation.

4. If the sewers, being constructed under authority of the statutes, were properly constructed. of which no question has

been made, the city is not responsible in this action for any inci dental consequences of their operation by depositing sediment and sand in the channel of the brook; nor would the city be liable in any form of action if the sediment, sand, &c., deposited by the sewers, were less than the deposits caused by the surface flowage.

5. The plaintiff has shown no right, by prescription or other-wise, to enter his drain into the canal, nor to have the benefit of its channel, nor of the channel of the brook for underground drainage; and as the injuries for which he claims damages arose, not from any overflow of the water upon his grounds by the sur-face, but only from its setting back through his underground drain, he has no right of action.

6. If the plaintiff had any such right of drainage, he had also the right to enter below and clear out obstructions; and if, by so doing, or if, by providing a gate or flap in his drain to pre-vent back water, he might have avoided the injuries he has suf-fered, he cannot recover damages for those injuries from the city.

7. Inasmuch as the causes of obstruction of which the plain-tiff complains in this case are at most merely contributing causes, operating with others more directly efficient, for which the abutters upon the stream or other individuals, and not the city, are responsible, and over which the defendants have no control, and as no means are afforded to determine what part or how much of the damages are due to each, and there is no evidence of combination or concert, no damages can be assessed against the city.

Upon a careful consideration of the evidence applicable to these several positions of the parties, we have arrived at the fol-lowing conclusions of fact.

First. That the filling up of the bed of the channel, formed by the old canal, was a natural and inevitable consequence of the discontinuance of its use as a canal, and the continued maintenance of the lock for Fox's Mill.

Secondly. That the surface wash from the streets has contrib uted materially to this result; hastening the operation by the

large amount of deposit that is carried from them into the stream. But we also find that the brook is the natural means of escape for the water which accumulates upon those streets, and that this wash is incidental only to the growth of the city and the construction of its streets.

Thirdly. That the deposits from the underground sewers have also contributed, in some measure, to the filling up of the bed of the brook; but we are of opinion that the sediment carried by them into the brook is less in amount, and less injurious in kind, than would be carried in from the surface by the same water, if the sewers had not been made. We do not find that their deposits have been so considerable as to form any substantial part of the causes of the flooding complained of, or to exert any appreciable effect upon the plaintiff.

Fourthly. That Front Street bridge, in the present condition of the channel at, above and below it, does tend, in freshets, to increase the height of water above, by checking its free passage, so as to effect, in some degree, the height of water at the outlet of the plaintiff's drain, and increase the back water upon his premises. In consequence of the filling up the channel, the water, in its ordinary stages, stands up to the point of the springing of the arch of the bridge. The arch is a segment, considerably less than a semicircle; so that, as the water rises, the width of the surface passage contracts rapidly. If the banks of the stream were free and its channel cleared to the same depth as in 1846, when the bridge was built, the effects would be much less, and would probably not sensibly affect the plaintiff's premises.

Fifthly. That the direct and most efficient causes of the flooding of which the plaintiff complains are: 1. The confinement of the stream to a narrow channel, by the buildings, embankments and walls which have been constructed along both sides of the brook by the riparian occupants, and parties other than the city; including the abutment and arches of the bridges built by the Worcester and Nashua Railroad Corporation, as before stated. 2. The filling up of the bed of the channel. The sediment from the sewers, and still more, the surface wash from the streets, contribute to this condition. But the chief and by far

the most efficient cause of this difficulty arises from the acts and neglects of the riparian occupants, and parties other than the city, who make the brook a receptacle for all kinds of waste material. 3. Obstructions in and over the channel, placed or permitted by riparian occupants.

Sixthly. The lock gate being retained and used for mill purposes, the difference of level between the surface of water there and at the outlet of the plaintiff's drain is so slight that, in our opinion, no complete and permanent relief from the difficulties which the plaintiff and other proprietors upon the stream suffer from the frequent flooding of their premises can be secured without the removal or reduction of those gates.

Seventhly. The bridges at Exchange Street and Bridge Street are also contributing causes of the flooding of the plaintiff's works. These bridges were built by the Worcester and Nashua Railroad Corporation, for the purposes both of railway and highway crossings, and have been and are used by the city as a part of those public streets.

Eighthly. Upon the question of the plaintiff's right to enter the stream with his drain, no fact appeared other than what is contained in the foregoing statement, except that the plaintiff testified in cross-examination that he had no arrangement with the owners of the canal as to the discharge of his drain into the canal basin.

Ninthly. There is no evidence by which we can apportion the damages hereinbefore estimated by us, or determine what part or how much of the injury, for which it is assessed, was caused by or is attributable to either or all of the causes for which it is claimed that the defendants are responsible; and we are of opinion that, in the nature of the case, it is impossible so to apportion the damages.

The case was reserved for the determination of the whole court.

*F. H. Dewey & G. F. Hoar*, for the plaintiff. The gist of the action is the obstruction of the rightful flow of the water. The existence of the excavation for drainage is incidental merely and is offered as aggravation of damages. The defendants

have caused the water to set back upon the plaintiff in four ways.

1. By the Front Street bridge. It appears that this bridge does increase the back water upon the plaintiff's premises. The right to construct highways does not include the right so to construct bridges as to set back water upon lands beyond the limits of the way. *Lawrence* v. *Fairhaven*, 5 Gray, 110. *Perry* v. *Worcester*, 6 Gray, 544. *Parker* v. *Lowell*, 11 Gray, 353. *Rowe* v. *Granite Bridge*, 21 Pick. 344, 348. For an obstruction of the flow of the water so caused, an action will lie. And it is not enough for a town to build its bridge with sluice ways which are sufficient in the first instance; but it is bound to keep them so. *Lawrence* v. *Fairhaven*, above cited. The defendants have shown no justification. None of the elements of the case supposed by the prayer for instructions in *Sprague* v. *Worcester*, 13 Gray, 193, exist here. On the other hand, the causes of the filling up of the bed of the channel were in operation when the defendants built the bridge, and should therefore have been anticipated and provided for. The defendants did not perform their duty merely by constructing a culvert sufficient to discharge the water for the time being. They were bound to keep the water way ample. Nor can the defendants escape liability because the injury cannot be exactly apportioned. The city can maintain an obstruction to a watercourse in the exercise of its right of eminent domain, only in cases where it is clearly reasonable and necessary, and works no injury to private rights.

2. By the railroad bridges. These bridges are maintained for a purpose common to the city and the railroad company, and their original construction, though at the cost of the railroad, was in the exercise of the power vested by law in both. This liability is recognized by Gen. Sts. *c.* 63, § 67, providing a remedy over.

3. By the deposits from the sewers. The auditors report that these deposits contributed to filling up the bed of the brook, and that this filling up contributed to the flooding of the plaintiff. When they further say that these deposits have not been so considerable as to form any substantial part of the causes of the flooding, or to exert any appreciable effect upon the plaintiff,

they must mean that these deposits do not affect the plaintiff's premises in and of themselves, except as combining with the other causes named. The city had no right to take private land for sewers, there being no provision for compensation. *St.* 1848, c. 32, § 14. Gen. Sts. *c.* 48, §§ 3–7. *Bloodgood* v. *Mohawk & Hudson Railroad,* 18 Wend. 9. *Rexford* v. *Knight,* 1 Kernan, 308. *Cushman* v. *Smith,* 34 Maine, 247. Nor can they so construct sewers as to create a nuisance to private lands, or disturb a private easement. *Child* v. *Boston,* 4 Allen, 41, and cases cited. *Eastman* v. *Meredith,* 36 N. H. 284. The principal sewer empties under Front Street bridge. It does not avail the defendants that this deposit is less in amount than would be carried in by the ordinary surface wash. It is no justification for an illegal act, that it does less harm than might be caused in other modes for which the law furnishes no remedy. *Chapman* v. *Thames Co.* 13 Conn. 269. *Attorney General* v. *Council of Birmingham,* 4 Kay & Johns. 528, 542. The public have no right of drainage which justifies the pollution or obstruction of the waters of a natural stream, to the injury of a single riparian proprietor. *Attorney General* v. *Birmingham,* above cited. *Stockport Water Works Co.* v. *Potter,* 31 Law Journ. (Exch.) 9. *Attorney General* v. *Metropolitan Board of Works,* 9 Law Times (N. S.) 139.

4. By constructing artificial gutters above ground, for the surface wash. This ground of claim depends on substantially the same principles with that for the injury caused by Front Street bridge.

*B. F. Thomas & P. E. Aldrich,* for the defendants.

COLT, J. The plaintiff is a riparian proprietor upon Mill Brook, a natural watercourse flowing through the city of Worcester, and has the right to have it flow through and from his premises in a free and unobstructed channel. He may maintain this action against those parties who interfere with that right, or against any one of them who by his unlawful act contributes substantially to the injury which he suffers, unless the party or parties charged with creating the obstruction can claim the protection of the statutes known as the mill acts, or those other statutes which provide compensation in a particular mode for

injuries done by public authority in the exercise of the right of eminent domain. If the injury is produced by the joint action of several parties, and especially if it is the result of the independent action of several parties contributing thereto, though not in combination or by concert, it is no defence that all are not made defendants; for when the injury does not arise from privity of contract, but is a mere misfeasance, misjoinder of defendants cannot be availed of to defeat the action. The suggestion that the damage to the plaintiff is produced by the independent acts and trespasses of others can be considered only upon the question of damages.

The report of the auditors establishes the fact that the plaintiff within six years past has suffered serious damage by water set back upon his premises, which would not have occurred if Mill Brook had remained in the condition in which it was in 1846. The causes which have produced the injury are various, numerous, and in their combined action unusually complicated. From 1828 to 1846 the existence of the Blackstone Canal, terminating at or near the plaintiff's premises, furnished a sort of artificial channel for the brook, which to the advantage of the plaintiff was kept dredged and deepened for the uses of the canal. In that year the canal was discontinued, though the first lock gate below, which sets back water to near the outlet of the plaintiff's drain, was continued by law for mill purposes, and has since been and is now so used. The discontinuance of the canal and the continuance of the dam at the lock gate it is found naturally and inevitably caused the filling up of the bed of the channel, so that no complete or permanent relief can be had to the plaintiff without the removal or reduction of the dam.

In 1846, the year of the discontinuance of the canal, Front Street bridge was built by the defendants across the brook, at a point below the plaintiff's premises, upon a public street of that name; and such is the size and form of its arch that, in connection with other causes, it now tends in freshets to increase the height of the water above, so as to affect in some degree the height at the outlet of the plaintiff's drain, and increase back water on his premises.

In 1849 or 1850 the bridges on Exchange and Bridge Streets were constructed by the Norwich and Worcester Railroad, and are described as direct and efficient causes of the flooding, in connection with the encroachments which have from time to time been made upon the stream by buildings, embankments and mills, on both sides, constructed by riparian proprietors and parties other than the city, and by obstructions in and over the stream, placed there by such parties.

The report finds that the chief and by far the most efficient cause arises from the acts and neglects of riparian occupants and parties other than the city, who make the brook a receptacle for all kinds of waste material, so that since the discontinuance of the canal the channel has become filled with sand, gravel, bricks, stones and rubbish of all kinds, washed or thrown in, making at the outlet of the plaintiff's drain the bed of the stream three and a half feet higher now than the bed of the old canal.

During this time, the surface wash from the streets of the city rapidly enlarging their limits, and to some extent the sediment from the underground sewers which it is inferred have been constructed by the city since 1846, have contributed to the filling up of the channel.

Of these coöperating causes, thus briefly indicated, the case requires us to consider only those which it is alleged the city is responsible for.

1. The surface wash from the streets. This is stated to be incidental to the growth of the city and the construction of the streets. It finds its way naturally into Mill Brook, which furnishes the only channel for the accumulated surface water of the vicinity. No new watercourse has been diverted into it. It receives no more water than would be collected by the natural surface of the land, but, by the changed uses to which a dense population have appropriated it, the soil of the numerous streets has been more rapidly carried into the stream. To hold the defendants liable to an action from such cause would be to say that the owner of land must be restricted to such uses of it as will not, by the ordinary action of the elements, cause the soil to

wash in and fill to any increased extent the adjacent brooks and streams. The injury which results to the plaintiff from this cause must be regarded as *damnum absque injuria.* There is another answer to this claim of the plaintiff. The city, by their proper authorities and agents, are charged with the public duty of constructing and maintaining the public streets. They must construct and maintain them in such places and in such manner as the public convenience and necessity require. They must provide for and dispose of the surface water which falls upon them, and, in the discharge of this duty, neither the city nor their agents can be proceeded against in an action of tort for damage sustained by a private citizen. In the construction of streets, highways and bridges, it is the right of the public to take all private property necessary, and do all other necessary incidental damage to the individual. The laws of the Commonwealth provide compensation for such injury, but the remedy must be sought in the manner pointed out by the statutes, and not by action of tort against the city or their agents. If the public work is built so as to cause unnecessary damage by want of reasonable care and skill in its construction, then the right of eminent domain will not protect the parties by whom the work is done, but they may be liable in tort for such unnecessary injury. The case does not find that the surface wash from the streets was not the necessary and inevitable consequence of their construction, or that the streets were laid out and built without reasonable care and skill. *Flagg* v. *Worcester*, 13 Gray, 601. *Sprague* v. *Worcester*, Ib. 193. *Perry* v. *Worcester*, 6 Gray, 544. *Parks* v. *Newburyport*, 10 Gray, 28. *Mellen* v. *Western Railroad*, 4 Gray, 303.

2. The report finds that the deposits from the underground sewers have contributed in some manner to the filling up of the brook, but that the sediment carried by them into it is less in amount and less injurious in kind than would have been carried in from the surface by the same water, if the sewers had not been built; and further, that these deposits have not been sufficient to exert any appreciable effect on the plaintiff; and this seems to dispose of this cause of complaint upon two good grounds.

3. The bridges at Exchange and Bridge Streets it appears are so built that their abutments and arches are direct and efficient causes of the plaintiff's injury. They were built by the railroad corporation for the purpose of both railroad and highway crossings, and we must presume were built under the authority of the charter and the laws of the Commonwealth. The city has no power to prevent or to dictate the mode of their erection. This was a matter over which the county commissioners had exclusive jurisdiction in the last resort. The assent of the mayor and aldermen would not render the city responsible. They were not agents of the city for such purposes. Nor would the use of these bridges for public travel to which they were adapted make them structures, for a defect in the original erection of which the city would be responsible. The only party at fault is the railroad corporation. If constructed with reasonable care and skill, the plaintiff's remedy for an injury caused by them would be, as before suggested, by application for damages to the county commissioners. If the work was not authorized by the charter or was improperly executed, an action of tort might be sustained against the party in fault. It does not follow necessarily, from the fact that injury to the plaintiff is occasioned by these bridges, that any one is liable in this form of action. *Sts.* 1846, *c.* 271; 1849, *c.* 159. Gen. Sts. *c.* 63, §§ 55, 62. *Sawyer* v. *Northfield*, 7 Cush. 490. *Gardiner* v. *Boston & Worcester Railroad*, 9 Cush. 1. *Mellen* v. *Western Railroad*, 4 Gray, 301. *Vinal* v. *Dorchester*, 7 Gray, 421. *Child* v. *Boston*, 4 Allen, 41.

4. The only remaining obstruction which is charged upon the defendants is the Front Street bridge. This structure was erected by the city authorities for the accommodation of the public travel. They were bound to construct it with reasonable care and skill, providing waterways sufficiently capacious to accommodate the flow of the stream at all seasons of the year, and all times of ordinary high water or freshets. The considerations above stated apply here. If this bridge was properly built, then, though the plaintiff suffers, his remedy is not by an action of this description. But without depending upon this view of the case as respects this bridge, we think there are not

facts enough disclosed in the report to justify charging the defendants with any part of the damage to the plaintiff caused by defect in its construction. The burden of proof is upon the plaintiff. He must make out his case. ` The facts found must be such as to satisfy us reasonably of the defendants' fault, and that their fault contributed appreciably to the plaintiff's damage. The report finds that if the stream were now in the condition in which it was in 1846, when the bridge was built, the bridge as it stands would probably not sensibly affect the plaintiff's premises; and that if the bridge were enlarged or removed, the water would still continue to set back upon the plaintiff's premises, by the other causes named. To this the plaintiff answers that the city was bound to provide for such future alterations in the character of the stream as could reasonably be anticipated. As to changes produced by natural causes alone, this may be true. But it cannot be required of the city that they should have built this bridge in anticipation of changes and obstructions produced by the exercise of the chartered rights of other corporations, or the mere trespasses of riparian proprietors unlawfully filling up and encroaching upon the stream. We cannot construe the report as affirmatively showing that this bridge, in connection with natural causes, or others which might reasonably have been anticipated when the bridge was built, and independently of those causes which have arisen since from the acts of others than the city, would have caused any appreciable damage to the plaintiff. *Lawrence* v. *Fairhaven,* 5 Gray, 110. *Rowe* v. *Granite Bridge,* 21 Pick. 348. *Sprague* v. *Worcester,* 13 Gray, 193.

In the result to which we come, it is not necessary to consider the ground, much relied on by the defendants, that the plaintiff contributed to his own injury by excavating his basement and extending his drain after the discontinuance of the canal in 1846. *Judgment for the defendants.*